

# Summons

In the matter of   Facebook Inc. & Subsidiaries (a consolidated group)

Internal Revenue Service (Division):   Large Business & International Division

Industry/Area (name or number):   Western Compliance (Territory 4)

Periods:   Taxable years ended December 31, 2008; December 31, 2009; and December 31, 2010

## The Commissioner of Internal Revenue

To:  Facebook Inc. & Subsidiaries (a consolidated group)

At:  1601 Willow Road, Menlo Park, CA 94025

You are hereby summoned and required to appear before   Leland Wong (ID: 100682934) or his designee
an officer of the Internal Revenue Service, to bring with you and to produce for examination the following books, records, papers,
and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the
administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

This Summons requests that you produce the documents described in the requests in Attachment 1, in accordance
with the Instructions and Definitions outlined in Attachment 1 and the Production Specifications for
Electronically Stored Information [ESI] and Hard Copy Documents described in Attachment 2. Both Attachments are
incorporated by reference herein.

**Government Exhibit**

5 (to the Stone Declaration)

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear:**

Internal Revenue Service, 55 South Market Street, San Jose, CA 95113-2324, 408-283-1894

**Place and time for appearance at**  55 South Market Street, 6th floor, San Jose, CA 95113-2324

**IRS**

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

on the _____17th_____ day of ____June____  ___2016___ at __1__ o'clock __p__ m.
                                                                    *(year)*

Issued under authority of the Internal Revenue Code this __1st__ day of ____June____, ___2016___
                                                                                        *(year)*

_____
Signature of issuing officer

Internal Revenue Agent
Title

_____
Signature of approving officer *(if applicable)*

WC Team Manager
Title

**Original — to be kept by IRS**



# Service of Summons, Notice and Recordkeeper Certificates

(Pursuant to section 7603, Internal Revenue Code)

I certify that I served the summons shown on the front of this form on:

| Date | Time |
|---|---|
| June 1, 2016 | 11:30 am |

**How Summons Was Served**

1. ☒ I certify that I handed a copy of the summons, which contained the attestation required by § 7603, to the person to whom it was directed.

2. ☐ I certify that I left a copy of the summons, which contained the attestation required by § 7603, at the last and usual place of abode of the person to whom it was directed. I left the copy with the following person (if any): _____

3. ☐ I certify that I sent a copy of the summons, which contained the attestation required by § 7603, by certified or registered mail to the last known address of the person to whom it was directed, that person being a third-party recordkeeper within the meaning of § 7603(b). I sent the summons to the following address: Facebook Inc. & Subsidiaries (a consolidated g 1601 Willow Road, Menlo Park, CA 94025

| Signature | Title |
|---|---|
| | Internal Revenue Agent |

4. This certificate is made to show compliance with IRC Section 7609. This certificate does not apply to summonses served on any officer or employee of the person to whose liability the summons relates nor to summonses in aid of collection, to determine the identity of a person having a numbered account or similar arrangement, or to determine whether or not records of the business transactions or affairs of an identified person have been made or kept.

I certify that, within 3 days of serving the summons, I gave notice (Part D of Form 2039) to the person named below on the date and in the manner indicated.

Date of giving Notice: _____     Time: _____

Name of Noticee: _____

Address of Noticee (if mailed): _____

**How Notice Was Given**

☐ I gave notice by certified or registered mail to the last known address of the noticee.

☐ I left the notice at the last and usual place of abode of the noticee. I left the copy with the following person (if any).

☐ I gave notice by handing it to the noticee.

☐ In the absence of a last known address of the noticee, I left the notice with the person summoned.

☒ No notice is required.

| Signature | Title |
|---|---|
| | |

I certify that the period prescribed for beginning a proceeding to quash this summons has expired and that no such proceeding was instituted or that the noticee consents to the examination.

| Signature | Title |
|---|---|
| | |

Form **2039** (Rev. 10-2010)



# Summons

In the matter of  Facebook Inc. & Subsidiaries (a consolidated group)

Internal Revenue Service (Division):  Large Business & International Division

Industry/Area (name or number):  Western Compliance (Territory 4)

Periods:  Taxable years ended December 31, 2008; December 31, 2009; and December 31, 2010

## The Commissioner of Internal Revenue

To:  Facebook Inc. & Subsidiaries (a consolidated group)

At:  1601 Willow Road, Menlo Park, CA 94025

You are hereby summoned and required to appear before  Leland Wong (ID: 100682934) or his designee
an officer of the Internal Revenue Service, to bring with you and to produce for examination the following books, records, papers,
and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the
administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

This Summons requests that you produce the documents described in the requests in Attachment 1, in accordance
with the Instructions and Definitions outlined in Attachment 1 and the Production Specifications for
Electronically Stored Information [ESI] and Hard Copy Documents described in Attachment 2. Both Attachments are
incorporated by reference herein.

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original
and that it is a true and correct copy of the original.

_____  _Internal Revenue Agent_
Signature of IRS officer serving the summons        Title

**Business address and telephone number of IRS officer before whom you are to appear:**

Internal Revenue Service, 55 South Market Street, San Jose, CA 95113-2324, 408-283-1894

**Place and time for appearance at**  55 South Market Street, 6th floor, San Jose, CA 95113-2324

**IRS**

on the ____17th____ day of ____June____ ____2016____ at ____1____ o'clock __p__ m.
                                                    (year)
Issued under authority of the Internal Revenue Code this __1st__ day of ____June____ , ____2016____
                                                                              (year)

Department of the Treasury
Internal Revenue Service        _____     Internal Revenue Agent
                                Signature of issuing officer              Title

www.irs.gov                     _____     WC Team Manager
                                Signature of approving officer (if applicable)    Title

Form 2039 (Rev. 10-2010)
Catalog Number 21405J                              **Part A - to be given to person summoned**



# Provisions of the Internal Revenue Code

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties. -

(1) General Notice. - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

(2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

(3) Exceptions. - This subsection shall not apply-

(A) to any contact which the taxpayer has authorized,

(B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

(C) with respect to any pending criminal investigation.

(d) No administrative summons when there is Justice Department referral.-

(1) Limitation of authority. - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

(2) Justice Department referral is in effect. - For purposes of this subsection-

(A) In general. - A Justice Department referral is in effect with respect to any person if-

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

(B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

(i) the Attorney General notifies the Secretary, in writing, that –

(I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

(II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

(III) he will discontinue such a grand jury investigation.

(ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

(iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii).

(3) Taxable years, etc., treated separately. - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

---

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes.

～ ～ ～ ～ ～

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers. -

(1) In general. - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper.

(2) Third party record keeper. - For purposes of paragraph (1), the term *third-party recordkeeper* means -

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A));

(B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681 a(f));

(C) Any person extending credit through the use of credit cards or similar devices

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4));

(E) any attorney,

(F) any accountant,

(G) any barter exchange (as defined in section 6045(c)(3));

(H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof.

(I) any enrolled agent, and

(J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(ii) to which source code relates.

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), and 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or Commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case, and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

～ ～ ～ ～ ～

## Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall not be less than 10 days from the date of the summons.

## Sec. 7610. Fees and costs for witnesses

(a) In general - The Secretary shall by regulations establish the rates and conditions under which payment may be made of –

(1) fees and mileage to persons who are summoned to appear before the Secretary, and

(2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if –

(1) the person with respect to whose liability the summons is issued has a proprietary interest in the books, papers, records or other data required to be produced, or

(2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such.

(c) Summons to which section applies. - This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602.

## Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

# Notice of Payment Information for Recipients of IRS Summons

If you are a third-party recipient of a summons, you may be entitled to receive payment for certain costs directly incurred which are reasonably necessary to search for, reproduce, or transport records in order to comply with a summons.

This payment is made only at the rates established by the Internal Revenue Service to certain persons served with a summons to produce records or information in which the taxpayer does not have an ownership interest. The taxpayer to whose liability the summons relates and the taxpayer's officer, employee, agent, accountant, or attorney are not entitled to this payment. No payment will be made for any costs which you have charged or billed to other persons.

The rate for search costs is limited to the total amount of personnel time spent locating and retrieving documents or information requested by the summons. Specific salaries of such persons may not be included in search costs. In addition, search costs do not include salaries, fees, or similar costs for analysis of material or for managerial or legal advice, expertise, research, or time spent for any of these activities. If itemized separately, search costs may include the actual costs of extracting information stored by computer in the format in which it is normally produced, based on computer time and necessary supplies. Time for computer search may be paid.

Rates for reproduction costs for making copies or duplicates of summoned documents, transcripts, and other similar material may be paid at the allowed rates. Photographs, films, and other material are reimbursed at cost.

The rate for transportation costs is the same as the actual cost necessary to transport personnel to locate and retrieve summoned records or information, or costs incurred solely by the need to transport the summoned material to the place of examination.

In addition to payment for search, reproduction, and transportation costs, persons who appear before an Internal Revenue Service officer in response to a summons may request payment for authorized witness fees and mileage fees. You may make this request by contacting the Internal Revenue Service officer or by claiming these costs separately on the itemized bill or invoice as explained below.

## Instructions for requesting payment

After the summons is served, you should keep an accurate record of personnel search time, computer costs, number of reproductions made, and transportation costs. Upon satisfactory compliance, you may submit an itemized bill or invoice to the Internal Revenue Service officer before whom you were summoned to appear, either in person or by mail to the address furnished by the Internal Revenue Service officer. Please write on the itemized bill or invoice the name of the taxpayer to whose liability the summons relates.

If you wish, Form 6863, Invoice and Authorization for Payment of Administrative Summons Expenses, may be used to request payment for search, reproduction, and transportation costs. Standard Form 1157, Claims for Witness Attendance Fees, Travel, and Miscellaneous Expenses, may be used to request payment for authorized witness fees and mileage fees. These forms are available from the Internal Revenue Service officer who issued the summons.

If you have any questions about the payment, please contact the Internal Revenue Service officer before whom you were summoned to appear.

Anyone submitting false claims for payment is subject to possible criminal prosecution.



**Department of the Treasury**
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

Part B — to be given to person summoned

## Sec. 7609. Special procedures for third-party summons

**(a) Notice—**

(1) In general. - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

**(b) Right to intervene; right to proceeding to quash. -**

(1) Intervention. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) Proceeding to quash. -

(A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

(B) Requirement of notice to person summoned and to Secretary. - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).

(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

**(c) Summons to which section applies. -**

(1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

(2) Exceptions. - This section shall not apply to any summons

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;

(C) issued solely to determine the identify of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);

(D) issued in aid of the collection of-

(i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause, or

(E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and

(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

(3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g).

(4) Records. - For purposes of this section, the term records includes books, papers, and other data.

**(d)** Restriction on examination of records. - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -

(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), and

(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.

**(e) Suspension of Statute of Limitations. -**

(1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

(2) Suspension after 6 months of service of summons. - In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under section 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-

(A) beginning on the date which is 6 months after the service of such summons, and

(B) ending with the final resolution of such response.

**(f) Additional requirements in the case of a John Doe summons. -**

Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that -

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

**(g) Special exception for certain summonses. -**

A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

**(h) Jurisdiction of district court; etc. -**

(1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.

(2) Special rule for proceedings under subsections (f) and (g) - The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

**(i) Duty of summoned party. -**

(1) Recordkeeper must assemble records and be prepared to produce records.- On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined.

(2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.

(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure.

(4) Notice of suspension of statute of limitations in the case of a John Doe summons. - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f).

**(j) Use of summons not required. -**

Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602.

## ATTACHMENT 1 - INSTRUCTIONS AND DEFINITIONS

**Instructions:**
1. Please respond to each request of the summons separately, by providing the information and document it requests after identifying the request by both paragraph number and request description.
2. In responding to each request of the summons, you are required to make a diligent search of documents (as defined below) that are in your possession, custody or control. If a document is responsive, please supply a complete and legible copy of the document. If a document is in electronic form, please produce an electronic copy of the document in native format (i.e. without any modification to the document or to the document's file name). If responsive electronically stored information (ESI) cannot be viewed in its native form without using proprietary software or directly accessing a proprietary database, please produce the ESI in another "reasonably usable form" (as defined by Fed. R. Civ. 34(a)(1)(A)) that allows the underlying information to be extracted, converted, imported, and searched. Attachment 2 contains additional information on the format for production of responsive ESI.
3. If any document or portion of any document (and any associated attachment) is withheld on the grounds of privilege or claimed protection (such as, attorney-client, I.R.C. § 7525, or attorney work product), or for any other reason, please identify, provide and state with respect to each such document or portion of the document (and any associated attachment) the following information:
    a. The name and title (as of the date of the preparation of the document) of the author or signatory of the document;
    b. The date the document was generated, prepared, or dated;
    c. The names of all persons or entities acting as advisors and the names of all persons or entities acting as clients on the subject matter covered by the document;
    d. The names of all persons or entities shown on the document to have received or sent the document;
    e. The names of all persons or entities known to have been furnished the document or informed of its substance;
    f. The nature and subject matter of the document, with the total number of pages, including attachments and enclosures;
    g. The privilege or protection claimed with a citation to the statute, regulation or rule that may apply;
    h. The engagement letter pursuant to which the document may have been created or prepared.
4. In the event that you claim a privilege or other basis for non-disclosure with respect to a portion of any document, please provide all segregable, non-privileged portions of the document.
5. If a document responsive to a summons request was once available but no longer exists, please provide:
    a. Taxpayer's written policy and procedures for storing and retaining such material and for destruction of such material;

    b.  Documents showing a responsive item is no longer in existence, the date destroyed, and the reasons for the destruction; and

    c.  Complete information as to alternative sources of the requested information.

6. If Taxpayer contends that a document responsive to a request in the summons is not within its possession, custody, or control, or is unavailable after inquiry, provide the documents that reflect Taxpayer's inquiries into obtaining the requested document and response thereto.

7. This summons covers all requested items which are in Taxpayer's actual or constructive possession or the actual or constructive possession of current or former employees, managers, officers, agents, attorneys, accountants, representatives, or any person(s) or entity(ies) acting in any capacity on behalf of Taxpayer.

8. Items requested in the summons requests are in Taxpayer's actual or constructive possession, custody, or control if any person or entity acting in any capacity for Taxpayer has access upon inquiry, or through a legal right, to obtain them.

9. As used in this summons, the singular shall include the plural and vice versa. Further, the words "or" and "and" shall mean "and/or" and the words "or" and "and" shall not be interpreted to limit the scope of the summons. Similarly, the words "any" and "all" are used interchangeably to mean "any/all" and the words "any" and "all" shall not be interpreted to limit the scope of the summons.

## Definitions:

1. "Taxpayer" or "Facebook US" refers to Facebook Inc. & Subsidiaries (a consolidated group) and includes any of its subsidiaries and affiliates, other related entities owned or controlled by Facebook Inc. & Subsidiaries, and/or former and current employees, officers, directors, agents, attorneys, accountants, or any other persons or entities acting under the control of, for or on behalf of Facebook Inc. & Subsidiaries.

2. The term "Document" is used expansively and means any recording, writing or photograph as referred to in Federal Rule of Evidence 1001. It includes, only by way of illustration and without limitation, all data in Taxpayer's possession, structured and unstructured, Taxpayer's Dashboard, Taxpayer's Wiki documents, forecasts, agreements, contracts, communications, letters, reports, analyses, memoranda, emails, spread sheets, PowerPoint presentations, slides, all electronic records, whether in an electronic or printed form, accessible through Taxpayer's user systems and databases, including those systems that back-up and save historical electronic records, transcripts, minutes, notes, bulletins, worksheets, schedules, notebooks, drawings, photographs, drafts, diaries, calendars, workpapers, contracts, purchase orders, telecopies, telexes, or any information stored on optical disc, magnetic tape, microfilm or microfiche, or computer memory storage device. "Emails," as Documents are intended to include and encompass both emails and all associated and referenced attachments. The term "Document" also refers to any draft or prior or modified version of a document that is responsive to this request.

3. A Document "referring to" or "relating to" a given subject matter includes a Document or statement, whether or not ultimately used or relied on by any Person, that contains any information concerning or regarding that subject matter.

4. "Person" means "person" as defined in Internal Revenue Code section 7701(a)(1) but also includes the Person's representatives.

5. "Facebook Ireland" refers to Facebook Ireland Holdings Limited or Facebook Ireland Holdings Unlimited, a company organized and existing under the laws of Ireland, having its registered address at 6th floor, South Bank House, Barrow, Dublin, Ireland but with its place of management and control in Grand Cayman, Cayman Islands. It includes Facebook Ireland Limited, an Irish-managed Irish entity that became a disregarded entity under Facebook Ireland effective September 1, 2010, and any other subsidiaries and affiliates.

6. "FIL" refers to Facebook Ireland Limited, a limited liability company organized and existing under the laws of Ireland, having its registered address at the same place as Facebook Ireland (6th floor, South Bank House, Barrow, Dublin, Ireland), and its principal place of business at Hanover Reach, 5-7 Hanover Quay, Dublin 2, Ireland. FIL became a disregarded entity under Facebook Ireland effective September 1, 2010.

7. The term "Facebook US's Territory" means the world until September 15, 2010. Effective September 15, 2010, "Facebook US's Territory" means the United States and Canada.

8. The term "Facebook Ireland's Territory" means the world except the United States and Canada, effective September 15, 2010.

## ATTACHMENT 1: DOCUMENTS TO BE PRODUCED

**Issue:** IRC section 482 – Arm's length price of rights in intangible property transferred by Taxpayer to Facebook Ireland through an Online Platform Intangible Property Buy-in License Agreement & a User Base Transfer and Marketing Intangibles License Agreement made effective September 15, 2010.

**Background:** According to ███████████  █████████████████ at Facebook US at the time of his examination under oath in 2014, ███████████ at Facebook US and he were the primary persons who identified and made decisions relating to the countries in which to open sales offices for Taxpayer. █████████ said:[1]



> We couldn't open every market in the world…[w]e decided to EMEA, and not to do Asia or Latin America. What we were seeking was ████████ and a ███████████. So we would look at the size of the ███████, the size of the ████, the size of the ███████ within that market. You know, the ████. Right? Did we have any ██████████████? So sometimes you would see our ████████████ growing which was an early indicator that there was a demand in the market. We would look at -- those were kind of real quantitative data points that you look at and put into a spreadsheet and go bang, bang, bang, bang, bang. And then there's qualitative. So is it – you know, ███████ ████████████████████████████████████████. So ████ was one of our biggest user markets in Europe at that time and we didn't open an office in ████. It wasn't politically stable at that time. It would have been difficult for us. ████████████ …Could we find good talent in the market? So those were all more I would call them qualitative. But those were the kind of decision points.  We did that against every market that we entered and we would choose, you know, in a given year, we're going to say we are entering six markets. Based on those different data points, here are the ones we think score  high and here are the ones that don't score as high… And the company would say, "Yes, ████, you ought to go in and do the job."

According to ████████████, Taxpayer had the following sales teams or organizations focused on  advertising during the years 2008 through 2010: (i) a Direct Sales Organization (DSO); (ii) a mid-market team; and (iii) an SMB team that was primarily self-serve. ████████████ ran the DSO and mid-market teams outside of the U.S. and Canada.[2] ████████████ also talked about two sales channels used by Taxpayer – Preferred Marketing Developers (PMDs) and Resellers.

---

[1] See Transcript of examination under oath of ████████████████████ at Facebook US, p. 59 onwards.
[2] See Transcript of examination under oath of ████████████████████ at Facebook US, p. 14 onwards.

**Please provide the following documents on Sales Offices, Country Heads and Performance Goals of Sales Persons:**

1. All Documents constituting, reflecting or referring to any communications, "data points" spreadsheets, or evaluations exchanged by or between ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮ or any other executives and/or managers of the Taxpayer, assessing, discussing or identifying the markets, locations or countries in which sales offices should be opened for Taxpayer outside of the United States.  Such Documents should include, but not be limited to, Taxpayer documents that communicate the same or similar idea articulated by ▮▮▮▮▮▮▮, above: "Yes, ▮▮, you ought to go in and do the job." Please provide all such Documents created, obtained, or circulated in:
   a. 2008
   b. 2009
   c. 2010
   d. 2011
   e. 2012

2. All Documents constituting, reflecting or referring to any internal communications of any of the Taxpayer's executives and/or managers regarding the need for Country Heads or Sales Directors[3] (Country Heads) outside of the United States in:
   a. 2007
   b. 2008
   c. 2019
   d. 2010
   e. 2011

3. All Documents constituting, reflecting or referring to any communications regarding the need to hire ▮▮▮▮▮▮▮▮ for Facebook UK Limited in 2007 "to build the sales organization within the UK market."[4]

4. All Documents constituting, reflecting or referring to any communications regarding the hiring of Country Heads in Western Europe, including France, Germany, Italy, Spain, and the Nordics.[5]

---

[3] See Transcript of examination under oath of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at Facebook US, p. 10.
[4] See Transcript of examination under oath of ▮▮▮▮▮▮, p. 8.
[5] See Transcript of examination under oath of ▮▮▮▮▮▮, p. 74 (indicating that some of the Western Europe offices and hiring of Country Heads may have happened even prior to Taxpayer selecting Dublin as its international headquarters).

5. All Documents constituting, reflecting or referring to any communications regarding the opening of a sales office in Australia (possibly in 2009) or the placement of a Facebook "US employee" in Sidney who acted as "de facto sales lead."[6]

6. All Documents constituting, reflecting, or referring to any performance goals provided to ▮▮▮▮▮▮ during any of the years 2007, 2008, 2009, 2010, 2011 or 2012.[7]

7. All Documents constituting, reflecting, or referring to any performance goals for ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, during any of the years 2007, 2008, 2009, 2010, 2011 or 2012.

8. All Documents constituting, reflecting, or referring to any performance goals, including quarterly "revenue targets," for any Country Heads in France, Germany, Italy, Spain, or the Nordics during any of the years 2008, 2009, 2010, 2011 or 2012.[8]

9. All Documents constituting, reflecting, or referring to any performance goals, including quarterly "revenue targets," for the Facebook "US employee" in Sidney who acted as "de facto sales lead."[9] Please provide all such Documents for any of the years 2008 through 2012.

10. All Documents constituting, reflecting or referring to any performance goals for, or criteria used to evaluate any product managers responsible at Facebook US for ads products during any of the years 2008 through 2012.[10]

11. All Documents constituting, reflecting or referring to any performance goals for any ads engineers responsible for ads products during any of the years 2008 through 2012.[11]

12. All Documents constituting, reflecting or referring to any reports or analyses or data collected and stored on Taxpayer's database from any surveys, polls, feedback or

---

[6] See Transcript of examination under oath of ▮▮▮▮▮▮, p. 63.
[7] See Transcript of examination under oath of ▮▮▮▮▮▮, p. 10 (stating that the goals he received were "very much ▮▮▮ driven").
[8] See Transcript of examination under oath of ▮▮▮▮▮▮, p. 85-86 (the sales teams had to agree to the numbers given and were compensated based on that number).
[9] See Transcript of examination under oath of ▮▮▮▮, p. 63.
[10] See Transcript of examination under oath of ▮▮▮▮▮▮, p. 92 (stating that goals for ads product managers would be ▮▮▮▮▮▮▮▮▮▮▮▮).
[11] See Transcript of examination under oath of ▮▮▮▮▮, p. 50.

comments from advertisers or their agents regarding any ad products or the "overall satisfaction" with the "Facebook experience."[12]

13. All documents constituting, reflecting or referring to any information brought to "market" on a "quarterly" or regular basis to let advertisers know how much the online social networking community of users had grown in Facebook US's Territory and/or Facebook Ireland's Territory.[13]

14. All documents constituting, reflecting or referring to any "business plans," submitted on a "country-by-country" basis by any of the Country Heads or sales teams to ████ ████ and/or Taxpayer's management.[14]  Please provide all such Documents created, obtained or circulated in:
   a. 2008
   b. 2009
   c. 2010
   d. 2011
   e. 2012

15. All Documents constituting, reflecting or referring to any training and/or marketing materials provided to any Country Heads to train or educate them on Taxpayer's culture, mission, technologies, targeting capabilities, or products.  Please provide all such Documents created, obtained or circulated in:
   a. 2008
   b. 2009
   c. 2010
   d. 2011
   e. 2012

---

[12] See Transcript of examination under oath of ████████ , p. 93-94 (discussing the type of "survey" data that would be retained on Taxpayer's database for review and later use).
[13] See Transcript of examination under oath of ████████ , p. 50.
[14] See Transcript of examination under oath of ████████ , p. 88-89.

**Please provide the following documents on Sales Teams, Sales Channels and Ads Products:**

16. All Documents constituting, reflecting or referring to any communications, reports, analyses, presentations, or memoranda identifying, detailing and/or describing any ads products, tools or features available on the online platform for advertisers assigned to or supported by the DSO.  Please provide all such documents created, obtained or circulated in:
    a. 2008
    b. 2009
    c. 2010
    d. 2011
    e. 2012

17. All Documents constituting, reflecting or referring to any communications, reports, analyses, presentations, or memoranda identifying, detailing, and/or describing geographical differences in any ads products, tools or features available on the online platform for advertisers assigned to or supported by the DSO in Facebook US's Territory and/or Facebook Ireland's Territory.  Please provide all such documents created, obtained or circulated in:
    a. 2008
    b. 2009
    c. 2010
    d. 2011
    e. 2012

18. All Documents constituting, reflecting or referring to any communications, reports, analyses, presentations, or memoranda identifying, detailing, and/or describing any ads products, tools or features available on the online platform for advertisers assigned to or supported by the mid-market group.  Please provide all such documents created, obtained or circulated in :
    a. 2008
    b. 2009
    c. 2010
    d. 2011
    e. 2012

19. All Documents constituting, reflecting or referring to any communications, reports, analyses, presentations, or memoranda identifying, detailing, and/or describing any geographical differences in ads products, tools or features available on the online platform for advertisers assigned to or supported by the mid-market group in

Facebook US's Territory and Facebook Ireland's Territory.  Please provide all such documents created, obtained or circulated in:

    a.  2008
    b.  2009
    c.  2010
    d.  2011
    e.  2012

20. All Documents constituting, reflecting or referring to any communications, reports, analyses, presentations, or memoranda identifying, detailing, and/or describing any ads products, tools or features available on the online platform for advertisers assigned to or supported by the SMB group.  Please provide all such documents created, obtained or circulated in:

    a.  2008
    b.  2009
    c.  2010
    d.  2011
    e.  2012

21. All Documents constituting, reflecting or referring to any communications, reports, analyses, presentations, or memoranda identifying, detailing, and/or describing any discussions of geographical differences in ads products, tools or features available on the online platform for advertisers assigned to or supported by the SMB group in Facebook US's Territory and Facebook Ireland's Territory.  Please provide all such documents created, obtained or circulated in:

    a.  2008
    b.  2009
    c.  2010
    d.  2011
    e.  2012

22. All Documents constituting, reflecting or referring to any communications, reports or announcements describing or summarizing the capabilities, features or value of the PMDs, such as ▓▓▓▓▓▓, used by Taxpayer to increase its targeting capabilities or advertising revenues.[15]  Please provide all such documents created, obtained or circulated in the years 2008 through 2012.

---

[15] See Transcript of examination under oath of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ at Facebook US, p. 41 onwards (according to ▓▓▓▓▓▓, the PMDs added great value to the Taxpayer's online platform as they ▓▓▓▓▓▓▓▓▓).

23. All Documents reflecting or referring to the identity of any of the PMDs with whom Taxpayer and/or Facebook Ireland had relationships during any of the years 2008 through 2012.

24. All Documents constituting, reflecting or referring to any reports, results, analyses, or summaries of testing of "█████████████" done by PMDs either together with Taxpayer or Facebook Ireland or separately on their own.[16]

25. All Documents constituting, reflecting or referring to any policies, terms and conditions, "structure," manuals, training materials, or guidelines provided to PMDs concerning their use of the online platform – "how they could operate, what they could do with data, what they couldn't do with data" on the platform created "for them to operate within."[17]  Please provide all such Documents for any of the years 2008 through 2012.

26. All Documents created, obtained or circulated, during any of the years 2008 through 2012, constituting, reflecting or referring to any management communications, reports or announcements describing or summarizing the capabilities, features or value of third party "resellers."[18]

27. All Documents constituting, reflecting or referring to any policies, terms and conditions, manuals, training materials, or guidelines created during any of the years 2008 through 2012 and provided to third-party resellers.

28. All Documents describing or referring to any of the capabilities, features or value of the █████████████, referenced by █████████████ in his examination under oath in 2014, used by Taxpayer to █████████████████████████[19]  Please provide all such Documents for any of the years 2008 through 2012.

29. All Documents constituting, reflecting or referring to any manuals or guides that explain or describe how brands, on the online platform, "could look and see how many users were -- how many people, right, were men 18 to 34 that lived in London that liked Manchester United that went to Cambridge."[20]  Please provide all such Documents for any of the years 2008 through 2012.

---

[16] See Transcript of examination under oath of █████████, p. 43.
[17] See Transcript of examination under oath of █████████, p. 43.
[18] See Transcript of examination under oath of █████████, pp. 41-42.
[19] See Transcript of examination under oath of █████████, p. 38.
[20] See Transcript of examination under oath of █████████, pp. 48-49.

30. All Documents constituting, reflecting or referring to any memoranda, reports or summaries analyzing Requests for Proposal submitted by any advertisers or their agencies to Taxpayer and/or Facebook Ireland during any of the years 2009 through 2011.

31. All Documents constituting, reflecting or referring to any internal memoranda, summaries or analyses of contents of reports, including "delivery reports" regarding "metrics on the back end" that were given to advertisers or advertising agencies after "campaigns" to show them the "reach" of the campaign and how they could better future performance and meet their "brand objectives" by taking additional actions.[21] Please provide all such documents created, obtained or circulated in any of the years 2008 through 2012.

32. All Documents constituting, reflecting or referring to the institution or introduction of Taxpayer's policy, referred to "███████████████" policy, to ████████████ ████████████████████[22] Please include in this response all documents that identify the person who was responsible for the institution of that policy.

33. All Documents constituting, reflecting or referring to any policies or terms and conditions of service, as of January 1 of each year below, which advertisers had to accept, abide by, or agree to in order to gain access and advertise to the online social networking community of any users of Facebook US and/or Facebook Ireland. Please provide all such documents for any advertisers advertising on the Facebook US and/or Facebook Ireland platform as of:
    a. January 1, 2008
    b. January 1, 2009
    c. January 1, 2010
    d. January 1, 2011
    e. January 1, 2012

---

[21] See Transcript of examination under oath of ████████████, pp. 48-49. See also Transcript of examination under oath of ████████, p. 48.
[22] See also Transcript of examination under oath of ████████, p. 50 (████████████ ████████████).

## ATTACHMENT 2
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

**Collection of Electronically Stored Information [ESI]**

There should be careful consideration given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process. Please see Appendix A for ESI terms and definitions.

**1.       Production Specification Modifications**

Any modifications or deviations from the Production Specifications may be done by agreement of the parties, and these modifications or deviations should be set forth in a written agreement. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and arrangements should be made with counsel for the Internal Revenue Service to facilitate their production.

**2.       Production Format for ESI and Hard Copy Documents**

Responsive ESI and hard copy documents shall be produced in the format outlined below. All ESI shall be produced as TIFF images with Optical Character Recognition (OCR). For ESI listed in Sections 4-9, the files should be produced as TIFF images with OCR if possible. Otherwise, the files should be produced as native files with a TIFF image placeholder and extracted text. All applicable metadata shall be extracted and produced (see Appendix B).  All data shall be provided in Concordance load file format.

### Image File Format

All images, paper documents scanned to images, and ESI, shall be produced as follows:

- 300 dpi single-page TIFF files, CCITT Group IV, 2D Compression
- TIFF image files shall be stored with the '.tif' file extension
- TIFF image file names shall include the unique Bates number burned into each image
- TIFF image files shall be uniquely and sequentially Bates numbered, with the Bates numbers endorsed on each image
    - Bates numbers shall not exceed 30 characters in length and shall include leading zeros in the number portion. Bates numbers shall be a unique number given to each page (for image files) or to each document (for native files). The Bates numbering convention shall remain consistent for the duration of the production period. There shall be no spaces between the prefix and the numeric value. If suffixes are required, please use dash notation.
    - Bates Number Sample Format
      PREFIX00000001

## PREFIX00000001-001

      PREFIX00000002
- No image folder shall contain more than 2000 TIFF images files

## ATTACHMENT 2
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

### Text File Format

All images, paper documents scanned to images, and ESI, shall be produced as follows:

- ASCII document level TXT files
- TXT files shall contain extracted text for all ESI and OCR text for all documents where text cannot be extracted
- TXT files shall be stored with a '.txt' file extension
- TXT file names should be identical to the starting Bates number of the image
- No text folder shall contain more than 2000 TXT text files

An Exception Report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the Bates number corresponding to each image.

### Native File Format

If a file cannot be imaged and is mentioned in Sections 4-9, the file shall be produced natively with a corresponding TIFF image placeholder and extracted text or, if applicable, a JPEG image file.

The native file shall be assigned a single Bates number for the entire file, which shall be endorsed on the corresponding TIFF image placeholder and used as the filename for the image file and text file (see Section 2 above for TIFF and Text file formats); however, no alteration shall be made to the filenames or extensions of the native files themselves. The native file shall be placed in a separate folder on the production media.

Example: AutoCAD file containing DWG and DXF files. These files shall be processed and produced as single-page JPEG image files or can be accompanied by a viewer if such files cannot be viewed in a generic application.

### Hard Copy Documents

All hard copy materials shall be scanned in as TIFF image files (see above). These files shall reflect accurate document unitization including all attachments and container information. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (ex: staples, paperclips, rubbers bands, folders or tabs in a binder).

All paper documents scanned to images shall be produced as follows:

**ATTACHMENT 2**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v**

- All documents scanned in black and white TIFF image format
  - o If an image requires color then the documents shall be scanned in as color 300 dpi single-page JPEG image files [Color is required when color in the document adds emphasis to the information in the document or is itself information that would not be readily apparent on the face of a black and white image]
- First document in the collection represents the parent document and all other documents represent the children
- Objective coding (ex: Author) shall be produced per metadata/database fields in Appendix B

<u>**Concordance Load Files**</u>        [All load files <u>MUST</u> contain field name headings]

Image files shall be accompanied by a Concordance Image load file that associates each Bates number with its corresponding single-page TIFF image file. The load file should also contain the image file path for each Bates numbered page.

- Image load file Sample Format
  ABC00000001,PRODVOL001,D:\PRODVOL001\Images\001\ABC00000001.TIF,Y,,,2
  ABC00000002,PRODVOL001,D:\PRODVOL001\Images\001\ABC00000002.TIF,,,,
  ABC00000003,PRODVOL001,D:\PRODVOL001\Images\001\ABC00000003.TIF,Y,,,1

Text files shall be accompanied by a Concordance Text load file that associates each document with its corresponding multi-page TXT text file. The load file should also contain the text file path for each text file path.

- Text load file Sample Format
  ABC00000001,PRODVOL001,D:\PRODVOL001\Text\001\ABC00000001.TXT

Metadata field information shall be located in a Concordance .dat file containing the delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed in Appendix B.

- Text delimited load files are defined using the standard Concordance delimiters.
  Field Separator          ¶ or Code 020
  Text Qualifier           þ or Code 254
- The text files should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files and their native file paths.
- There should be one line for every record in a production.
- The extracted text/OCR should not be in the .dat file but should be in a text load file as listed above

# ATTACHMENT 2
## Production Specifications for
### Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

- The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), Document Date, File Name, Title, then the structure may appear as follows:

  þBEGDOCþ¶þENDDOCþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

Directory and folder structure

  \PRODVOL001\Data
  \PRODVOL001\Images<Image files location (can include subfolders as needed)
  \PRODVOL001\Natives<Native files location (can include subfolders as needed)
  \PRODVOL001\Text<Extracted Text/OCR files location (can include subfolders as needed)

3.    Searching, De-Duplication, Near-Dupe Identification, Email Conversation Threading and Other Culling Procedures

Global de-duplication may be done, but the file path and custodian must be provided for each duplicate document in an Exception Report in .csv format. The producing party shall not use any other procedure to cull, filter, group, separate, or de-duplicate, or near-de-duplicate, (i.e., reduce the volume of) responsive material without discussion and written agreement of the parties. All objective coding shall be produced as additional metadata fields.

Prior to using any analytic software or technology to search, identify, or review potentially responsive material, including, but not limited to, technology assisted review (TAR), the producing party shall discuss these procedures with counsel for the Internal Revenue Service.

4.    Hidden Text, Embedded Files and Portfolio PDFs

Hidden text (ex: track changes, hidden columns, mark-ups, notes) shall be expanded and produced.  If a file cannot be expanded, it shall be produced natively.

Non-graphic embedded objects (Word documents, Excel spreadsheets, Wav files, etc.) shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments and the parent/child relationship should be preserved.

Portfolio PDF files shall be extracted and produced. For purposes of production, all email files and attachments in the portfolio shall be treated as families, preserving the parent/child relationship. The remaining files in the portfolio shall be treated as individual documents.

## ATTACHMENT 2
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

5.      Email

Email located within a repository or database:

> Email repositories or databases (ex: Outlook PST, Lotus NSF, Google MBOX, etc.) contain a variety of items including messages, calendars, contacts, tasks and notes. For purposes of production, responsive items include all of these items as well as the metadata/database fields outlined in Appendix B for Email, including but not limited to, all parent items (mail, calendar, contacts, tasks, notes) and child files (attachments to emails) with the parent/child relationship preserved. Email from systems other than Microsoft Exchange shall be produced after discussion and written agreement of the parties as to the format for the production of such data.

Email located outside a repository or database:

> Any email or other parent items (calendar, contacts, tasks, notes) found and collected outside of an email repository shall be produced in the same format as email found in a repository or database. For purposes of production, responsive items include all of these items as well as the metadata/database fields outlined in Appendix B for Email, including but not limited to, all parent items (mail, calendar, contacts, tasks, notes) and child files (attachments to emails) with the parent/child relationship preserved.

6.      Spreadsheet Files

Spreadsheet files (ex: Excel) shall be produced in native file format "as kept in the ordinary course of business." The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

7.      Structured Data

Prior to any production of responsive data from a structured database (ex: QuickBooks OR proprietary applications), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be produced in native Excel format. Data produced from these applications shall be produced after discussion and written agreement of the parties about the format for the production of such data.

8.      Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured or created.

## ATTACHMENT 2
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

9.      Instant Messenger Data, Voicemail Data, Audio Data, Video Data and Social Media

The producing party shall identify, collect, and produce any and all responsive data which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (ex: WebEx), social media (ex: Twitter), and similar technologies. However, such data, logs, metadata or other related files shall be produced after discussion and written agreement of the parties about the format for the production of such data.

10.     Encrypted Files

Responsive data that is protected by a password, encryption key, or other encryption method, shall be decrypted prior to processing for production.

Their unencrypted files shall be produced according to Section 2.

If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report, pursuant to section 14, and shall include all available metadata associated with the data, including custodian information.

11.     ESI from Non-PC or Non-Windows based Systems

If responsive ESI is stored or located in a non-PC or non-Windows system (ex: Apple, UNIX, Android), the ESI shall be produced after discussion and written agreement of the parties about the format for the production of such data.

12.     Compliance and Adherence to Generally Accepted Technical Standards

Productions shall be in conformance with standards and practices established by the National Institute of Standards and Technology (NIST), US National Archives & Records Administration (NARA), American Records Management Association (ARMA), American National Standards Institute (ANSI), International Organization for Standardization (ISO) and/or other US Government or professional organizations.

13.     Read Me Text File

All deliverables shall include a 'read me' text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

**ATTACHMENT 2**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v**

14.     Exception Report

An Exception Report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic document number assigned during the collection, processing, and production phases.

15.     Media Formats and Security for Delivery of Productions

Produced data shall be free from computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to counsel for the Internal Revenue Service.

All productions shall be sent in a self-extracting encryption file along with the corresponding password. Alternatively, the data can be encrypted using Secure Zip and sent along with the corresponding password. No other encryption software shall be used unless with consent of counsel for the Internal Revenue Service.

Productions shall be delivered on any of the following media and must be labeled with the witness's name, production date, bates range, and producing party:

> CD-ROMs and/or DVD-R formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications

> External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format) or flash drives formatted to NTFS format

16.     Transmittal Letter to Accompany Deliverables

All deliverables should be accompanied by a transmittal letter including the name of the witness, production date, bates range, and producing party.

## ATTACHMENT 2
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

### APPENDIX A –  ESI Terms and Definitions

1. **Cloud Computing** – With cloud computing, the user accesses a remote computer hosted by a cloud service provider over the Internet or an intranet, to access software programs or create, save, or retrieve data, for example, to send messages or create documents, spreadsheets, or databases. Examples of cloud computing include Gmail, Hotmail, Yahoo! Mail, Facebook, and on-line banking.

2. **Document unitization** – Document unitization is the process of determining where a document begins (its first page) and ends (its last page), with the goal of accurately describing what was a "unit" as it was received by the party or was kept in the ordinary course of business by the document's custodian. A "unit" includes attachments, for example, an email with an attached spreadsheet.

   Physical unitization utilizes actual objects such as staples, paper clips and folders to determine pages that belong together as documents.

   Logical unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical cues.

3. **ESI [Electronically Stored Information]** – Any information created, stored, or utilized with digital technology. Examples include, but are not limited to, word-processing files, e-mail and text messages (including attachments); voicemail; information accessed via the Internet, including social networking sites; information stored on cell phones; information stored on computers, computer systems, thumb drives, flash drives, CDs/DVDs, tapes and other digital media.

4. **Extracted Text** – The text of a native file extracted during ESI processing of the native file, most commonly when native files are converted to TIFF format. Extracted text is more accurate than text created by the OCR processing of document images that were created by scanning and will therefore provide higher quality search results.

5. **Image of a document or document image** – An electronic "picture" of how the document would look if printed. Images can be stored in various file formats, the most common of which are TIFF and PDF. Document images, such as TIFF and PDF, can be created directly from native files, or created by scanning hard copy.

6. **Load File** – A cross reference file used to import images or data into databases. A data load file may contain Bates numbers, metadata, path to native files, coded data, and extracted or OCR text. An image load file may contain document boundary, image type and path information.

**ATTACHMENT 2**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v**

Load files must be obtained and provided in software-specific formats to ensure they can be used by the receiving party.

7.  **Metadata** – Data that describes characteristics of ESI, for example, the author, date created, and date last accessed of a word processing document. Metadata is generally not reproduced in full form when a document is printed to paper or electronic image. Metadata can describe how, when and by whom ESI was created, accessed, modified, formatted or collected. Metadata can be supplied by applications, users or the file system, and it can be altered intentionally or inadvertently. Certain metadata can be extracted when native files are processed for litigation. Metadata is found in different places and in different forms. Some metadata, such as file dates and sizes, can easily be accessed by others; other metadata can be hidden or embedded and unavailable to computer users who are not technically adept. Note that some metadata may be lost or changed when an electronic copy of a file is made using ordinary file copy methods.

8.  **Native File** – A file as it was created in its native software, for example a Word, Excel, or PowerPoint file, or an email in Outlook.

9.  **OCR [Optical Character Recognition]** – A process that converts a picture of text into searchable text. The quality of the created text can vary greatly depending on the quality of the original document, the quality of the scanned image, the accuracy of the recognition software and the quality control process of the provider. Generally, OCR does not handle handwritten text or text in graphics well. OCR conversion rates can range from 50% to 98% accuracy depending on the underlying document. A full page of text is estimated to contain 2,000 characters, so OCR software with even 90% accuracy would create a page of text with approximately 200 errors.

10. **Parent /child relationships** – Related documents are described as having a parent/child relationship, for example, where the email is the parent and an attached spreadsheet is the child.

11. **PDF – "Portable Document Format"** – A file format created by Adobe that allows a range of options, including electronic transmission, viewing, searching, and depending on the version of Adobe used, editing.

12. **TIFF – "Tagged Image File Format"** – An industry-standard file format for storing scanned and other digital black-and-white, grey-scale, and full-color images.

## ATTACHMENT 2
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

## APPENDIX B - Required Metadata/Database Fields

***ALL*** – Hard Copy, Email, and Other ESI
***EMAIL*** – Email, Email repositories, and Attachments
***OTHER ESI*** – Data discussed in sections 4-9 (except section 5)

Family groups are considered emails and their attachments

| FIELD NAME | FIELD DESCRIPTION | FIELD TYPE | FIELD VALUE | APPLIES TO |
|---|---|---|---|---|
| BEGDOC | Starting Bates number (including prefix) – No spaces | Text | 60 | All |
| ENDDOC | Ending Bates number (including prefix) – No spaces | Text | 60 | All |
| BEGATTACH | Starting Bates number of Parent in a family group (only populate this field if the document is part of a family) | Text | 60 | All |
| ENDATTACH | Ending Bates number of last Attachment (only populate this field if the document is part of a family) | Text | 60 | All |
| PARENTID | Starting Bates number of Attachment's parent (only populate this field if the document is part of a family) | Text | 60 | Email and Other ESI |
| ATTRANGE | Starting Bates number of Parent and Ending Bates number of last Attachment in a family group (separated by a hyphen and populated for all documents in the family group) | Text | 60 | Email and Other ESI |
| ATTACHMT | Attachment document list (should be all Attachment's starting Bates numbers) | Text (semi-colon delimited) | Unlimited | All |
| ORGANIZATION | Organization where data was collected from | Text | 160 | All |
| VOLUME | Production Volume Number (ex: VOL001) | Number | 20 | All |
| PARAREQUESTNUM | Subpoena/request paragraph number to which the document is responsive | Text (semi-colon delimited) | Unlimited | All |
| CUSTODIAN | Custodian/Source (format: Last, First OR ABC Dept) | Text | 160 | All |

**ATTACHMENT 2**
**Production Specifications for**
**Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v**

| AUTHOR | Creator of the document | Text | 500 | Other ESI |
|---|---|---|---|---|
| TO | Recipient (Last name, First name) | Text (semi-colon delimited) | Unlimited | Email and Other ESI |
| FROM | Author (Last name, First name | Text | 160 | Email and Other ESI |
| CC | Carbon Copy Recipients (Last name, First name) | Text (semi-colon delimited) | Unlimited | Email and Other ESI |
| BCC | Blind Carbon Copy Recipients (Last name, First name) | Text (semi-colon delimited) | Unlimited | Email and Other ESI |
| EMAILSUBJECT | Subject line of the Email message | Text | Unlimited | Email |
| SUBJECT | Subject /Document Title | Text | Unlimited | Other ESI |
| DATECREATED | Date Created | Date | MM/DD/YYYY | Email and Other ESI |
| DATELASTMOD | Date Last Modified | Date | MM/DD/YYYY | Email and Other ESI |
| DATESENT | Date Sent | Date | MM/DD/YYYY | Email and Other ESI |
| DATERCVD | Date Received | Date | MM/DD/YYYY | Email and Other ESI |
| MAILSTORE | Name of the email file (ex: custodian name.pst) | Text | Unlimited | Email |
| MSGHEADER | Content of email msg header | Text | Unlimited | Email |
| MSGCLASS | Exchange Message class or equivalent | Text | 60 | Email |
| CONVINDEX | Conversation Index (Email system ID used to track replies, forwards, etc.) | Text | Unlimited | Email |
| FILENAME | File name of file as it appeared in its original location | Text | Unlimited | Other ESI |
| APPLICATION | Application used to create the native file (ex: Microsoft Office Word) | Text | 160 | Email and Other ESI |
| FILE EXTENSION | File Extension for the file (ex: .doc, .pdf) | Text | 10 | Email and Other ESI |
| RECORD TYPE | Use the following choices: Image, Loose Email, Email, EDoc, Image Attachment, Loose Email Attachment, Email Attachment, EDoc | Text | 60 | All |

# ATTACHMENT 2
## Production Specifications for
## Electronically Stored Information [ESI] and Hard Copy Documents – 2016 v

|  | Attachment (populate this field for every document) |  |  |  |
|---|---|---|---|---|
| FILEPATH | Full file path from data's original source | Text | Unlimited | Email and Other ESI |
| FOLDERPATH | Full original path to the source folder, files and/or mail stores | Text | Unlimited | Email and Other ESI |
| FILE SIZE | Native File Size in bytes | Number | 10 | Other ESI |
| MD5 HASH | MD5 Hash value used for de-duplication (Email hash values must be run with the Email and all its attachments) | Text | Unlimited | Email and Other ESI |
| PGCOUNT | Number of pages in a document | Number | 10 | All |
| COMMENTS | Comments from the body of the file | Text | Unlimited | Email and Other ESI |
| NATIVELINK | Relative file path location to the native file | Text | Unlimited | Email and Other ESI |
| TEXT FILE PATH | Relative file path of the text file associated with either the extracted text or OCR | Text | Unlimited | All |