Scott H. Frewing (SBN 191311)
Andrew P. Crousore (SBN 202195)
Victoria Kovanis (SBN 289275)
Robert Hammill (SBN 298689)
**BAKER & McKENZIE LLP**
660 Hansen Way
Palo Alto, CA 94304-1044
Telephone: +1.650.856.2400
Facsimile: +1.650 856.9299
scott.frewing@bakermckenzie.com
andrew.crousore@bakermckenzie.com
victoria.kovanis@bakermckenzie.com
robert.hammill@bakermckenzie.com

Attorneys for Respondent
Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>FACEBOOK, INC. AND SUBSIDIARIES,<br><br>Respondent. | Case No. 3:16-cv-03777-LB<br><br>**DECLARATION OF GARY D. SPRAGUE IN SUPPORT OF FACEBOOK'S OPPOSITION TO UNITED STATES' BRIEF REGARDING PRIVILEGED DOCUMENTS STILL IN DISPUTE**<br><br>DATE: March 29, 2018<br>TIME: 9:30 am<br>DEPT.: Courtroom 15-C |

I, Gary D. Sprague, pursuant to 28 U.S.C. § 1746, declare as follows:

**Background**

1. I am a partner with Baker McKenzie, a global law firm that provides legal services across seventy-seven offices worldwide. I have been an attorney with Baker McKenzie for thirty-three years.

2. I graduated from Stanford University in 1977 with a Bachelor of Arts in Political Science. I received my Juris Doctorate from Harvard Law School in 1981. I was admitted to the practice of law in California in 1981 and have remained an active member of the California Bar in

1

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague

good standing. In addition to being a licensed attorney, I am also a federally authorized tax practitioner under 26 U.S.C. § 7525(a)(3)(A).

3. My practice focuses on international corporate tax planning and advice, tax controversies, and e-commerce law. Most of my clients are software, high technology, and e-commerce companies.

4. Over the course of my career, I have held a number of leadership positions within the national and international tax communities. I was one of five business representatives confirmed by the Organisation for Economic Co-operation and Development ("OECD") to participate in the OECD Technical Advisory Group ("TAG") concerning the characterization of electronic commerce revenue for tax treaty purposes, and was elected chair of the business representatives on the TAG. I was also confirmed by the OECD to serve as the business co-chair on the Technical Advisory Group on Monitoring the Application of Existing Treaty Norms for the Taxation of Business Profits. I was the Co-General Reporter for the subject Taxation of Income Derived from Electronic Commerce for the International Fiscal Association 2001 Congress, and am a co-author of BNA Tax Management Portfolio No. 555, Federal Taxation of Software and E-Commerce. I was appointed by the International Fiscal Association ("IFA") USA Branch to serve on the IFA Executive Leadership Committee. I serve on the Tax Management U.S. International Advisory Board and am a regular contributor to the Tax Management International Journal's Leading Practitioner Commentary. From June 2012 to August 2015, I also served as the Managing Partner of Baker McKenzie's San Francisco and Palo Alto offices.

5. I have published over eighty articles in various journals, including the Georgia Law Review, the George Mason Law Review, Tax Management International Journal, Tax Notes International, and TAXES.

6. I speak frequently on a variety of international tax planning topics and have lectured in conjunction with seminars sponsored by various organizations including the Tax Executives Institute ("TEI"), the United States Council for International Business ("USCIB")/OECD International Tax Conference, the George Washington University/Internal Revenue Service ("IRS") Annual Institute on International Taxation, and the TEI-SJSU (San Jose State University) High

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

2

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague

Technology Tax Institute.

7. I have testified before the House Committee on Ways and Means Subcommittee on Select Revenue Measures with respect to extraterritorial income tax issues, and I was an invited speaker in the Internal Revenue Service Chief Counsel Lecture Series in (2006).

### Role Advising Facebook

8. I began my professional relationship with Facebook, Inc. ("Facebook") in 2007. The focus of my advice to Facebook has been on corporate and U.S. international tax matters, and I have continued as one of Facebook's legal and tax advisers to today.

9. Baker McKenzie's relationship with Facebook, both through me and through others at Baker McKenzie, is longstanding. Throughout the regular course of our relationship, Facebook has regularly sought tax and legal advice from me on a wide variety of tax issues.

10. In 2008, Facebook sought my legal and tax advice to assist in planning the establishment of Facebook's non-U.S. headquarters in a way that was consistent with U.S. and international tax law, and to prepare Facebook to defend itself from probable controversy with the IRS regarding the establishment of the non-U.S. headquarters. Facebook sought to establish a non-U.S. headquarters to help grow its presence outside of the United States and to capitalize on local talent and market insight in key non-U.S. locations.

11. Facebook retained me for advice regarding legal and tax issues arising from a non-U.S. headquarters and the resulting relationships between Facebook and its subsidiaries following the establishment of a non-U.S. headquarters. Facebook needed to make certain intangible property available for use by its non-U.S. headquarters and sought my advice about those arrangements. Part of my advice involved preparing the legal agreements that would govern these arrangements.

12. Advising clients with respect to the legal and tax consequences of international transactions, such as licensing agreements and cost-sharing arrangements, is a routine part of my practice, and I have been providing such tax advice to clients for most of my career.

13. As a legal and tax professional, I am familiar with the requirements of the attorney-client privilege, the work product doctrine, and the accountant-client privilege under 26 U.S.C. § 7525 ("Section 7525"), which confers upon federally authorized tax practitioners a privilege co-

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague

extensive in many respects with the attorney-client privilege.

14. When advising Facebook I was mindful of privilege issues. Specifically, I recognized that many of my communications with Facebook would be privileged. I also knew, however, that Facebook did not intend certain other communications to be privileged. For example, on occasion, I participated in meetings with members of the Ernst & Young ("EY") team engaged by Facebook to prepare transfer pricing documentation, and I understood that discussions of transfer pricing documentation for purposes of complying with 26 U.S.C. § 6662 were not intended to be privileged. When I was involved in such non-privileged communications, I intended to not reveal the substance of my privileged communications with Facebook, and to the best of my knowledge, I did not do so. Similarly, when my team and I prepared privileged communications to Facebook, we maintained those communications in confidence and did not share them with the EY transfer pricing documentation team.

15. On at least one occasion, my colleagues and I wrote a written summary of a meeting with the EY team. Although the communications during the meeting may not have been intended to be privileged because of the presence of the EY transfer pricing documentation team, my colleagues and I included in our written communications to Facebook our additional thoughts and mental impressions that were intended to be privileged legal advice to Facebook, and this advice was not revealed to the EY transfer pricing documentation team. The document referenced as Summons 1, Tab 16[1] (Bates Nos. FBIRS900000469-FBIRS900000478) is one such document in which the redacted portions of the document reflect privileged legal advice that was not shared with EY. In contrast, the non-redacted portions of the document reflect our summary of non-privileged communications at the meeting.

16. My communications to Facebook and EY conveying only draft agreements and non-substantive comments related to draft agreements were not intended to be privileged. Facebook's engagement of an EY team to handle § 6662 transfer pricing documentation was no mystery to me. Having dealt with many similar situations over the course of my career, I knew that Facebook's draft

---

[1] All specific documents referenced by Summons and Tab number herein refer to the Disputed Document Log attached as Appendix A to the United States' Brief Regarding Privileged Documents Still in Dispute, ECF No. 55-1.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

4

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague

agreements would be provided to EY's transfer pricing documentation team. As such, I was careful not to provide substantive advice to EY related to the intercompany agreements. For example, on May 27, 2009, I directed my colleague, Elizabeth Chien, to send a draft license agreement and list of outstanding drafting items to Ted Price (IRS Ex. 27A and 27B[2]). I never intended this communication to be confidential and purposefully excluded any substantive legal advice from this communication. On several occasions, my assistant and I sent similar communications to Price, consisting of simple lists of intercompany agreements and drafts (for example, IRS Ex. 11A and 11B; 12B through 12L, among others). In contrast, my substantive advice relating to legal issues connected with the intercompany agreements, and the substantive legal advice of my colleagues beyond just drafting, was intended to remain confidential and privileged. For example, the basis of the privilege protecting my communication to Ted Price on July 14, 2010 (Summons 1, Tab 76, Bates Nos. FBIRS900001302-FBIRS900001325) is my written interpretation of regulations that relate to Facebook's intercompany agreements. This email communicated more than basic agreement drafting or lists of agreements. I carefully chose when to send substantive legal comments related to the intercompany agreements, such as interpretations of certain tax regulations and other tax matters ancillary to the agreements, that would be covered by the attorney client privilege. In general, draft agreements and lists of draft agreements themselves were not intended to be privileged or confidential.

17. In the course of advising Facebook about potential tax consequences related to its non-U.S. headquarters and associated audit risk, I also worked with federally authorized tax practitioners from EY, at Facebook's request. My discussions with EY related to audit risk and tax planning advice in connection with Facebook's new non-U.S. headquarters. On many occasions, I expected that the tax advice that I discussed with EY's international tax structuring team would be protected by § 7525, as my counterparts at EY were also federally authorized tax practitioners engaged by Facebook. I was aware that EY had a transfer pricing team preparing 26 U.S.C. § 6662 documentation, though I did not advise on such documentation. I was careful not to reveal

---

[2] All IRS exhibits referenced herein refer to the exhibits attached to the Declaration of Leland Wong filed in support of the United States' Brief Regarding Privileged Documents Still in Dispute, ECF No. 56.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

5

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague

privileged information in the presence of the EY transfer pricing documentation team.

## Audit Risk

18. In connection with my advice about Facebook's non-U.S. headquarters, Facebook sought advice about potential audit risks and anticipated litigation with the IRS. At the time Baker McKenzie provided advice to Facebook regarding the establishment of its non-U.S. headquarters and related intercompany agreements, disputes over transfer pricing between taxpayers and the IRS were common, particularly disputes over cost sharing arrangements. Most notably, the high profile cost sharing case, *Veritas v. Commissioner*, 133 T.C. No. 14 (2009), was in litigation when Facebook sought my advice related to its non-U.S. headquarters. I was familiar with *Veritas*, which was docketed in Tax Court in June 2006 and went to trial in July 2008, not only because it was a prominent tax case but also because my partners represented the taxpayer. *Veritas* involved a cost sharing arrangement between a US parent and its foreign subsidiary to develop storage management software products. Veritas granted its subsidiary the right to use certain preexisting intangibles in Europe, the Middle East, Africa, and Asia. As consideration for the transfer, Veritas's subsidiary made a $166 million buy-in payment to Veritas. The IRS rejected Veritas's valuation of the intangibles and the valuation method used by Veritas. The IRS claimed the buy-in payment should have been $2.5 billion. The court rejected the IRS valuation determined that Veritas's valuation method was appropriate. In deciding in favor of Veritas, the court held that the IRS's determinations were arbitrary, capricious, and unreasonable.

19. *Veritas* is just one example of the IRS's focus on transfer pricing issues over the last thirty years. Large disputes in the 1980s that involved millions of dollars grew to be hundreds of millions and then billions of dollars for individual companies. Transfer pricing disputes became wide-spread across profitable industries in the U.S., particularly in the technology sector. The IRS frequently challenged taxpayer transfer pricing positions, imposing great cost and uncertainty on taxpayers.

20. When I advised Facebook about the potential tax and legal consequences of establishing its non-U.S. headquarters and related issues, I was aware of the IRS challenging numerous companies' transfer pricing, particularly those of tech companies. By that point, I had

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

decades of experience advising companies with transfer pricing issues and disputes. Given my experience, I anticipated that the IRS would audit and challenge Facebook's transfer pricing.

### Coordination with Other Advisors

21. In rendering tax and legal advice to Facebook regarding Facebook's non-U.S. headquarters, I was supported by other Baker McKenzie attorneys and tax professionals. Other Baker McKenzie attorneys who assisted me in providing legal advice to Facebook included, but were not limited to Taylor Reid, Ivan Morales, Irina Shestakova, Jamie Wong, Katherine Sakoda, Elizabeth Chien, and Lothar Determann. To the best of my knowledge, these attorneys were licensed to practice law at the time they rendered advice to Facebook.

22. Facebook also sought Baker McKenzie's legal advice regarding corporate issues with implementing Facebook's new structure. I enlisted my licensed Baker McKenzie corporate colleagues to assist with this legal advice.

23. Under my supervision and direction, Baker McKenzie attorneys rendered tax and legal advice to Facebook on a wide variety of issues relating to the tax consequences of establishing its non-U.S. headquarters and related intercompany agreements. My colleagues and I based our advice on the Internal Revenue Code, Treasury Regulations, the applicable case law, treatises, and other applicable authorities.

### Legal and Tax Advice

24. In the capacity as counsel for Facebook, my Baker McKenzie colleagues and I received requests for, and provided tax and legal advice related to Facebook's international structure, legal issues related to cost sharing and licensing arrangements, legal issues in connection with intercompany agreements, corporate governance matters, and dividend distribution issues, among other issues.

25. I understand that some of my advice was used by Facebook Tax and Facebook Legal to prepare internal presentations for Facebook executives, with the expectation that these presentations would remain confidential and accessible on a need-to-know basis by select Facebook executives. I understand that any privilege or protection associated with this advice was not waived. This advice was typically communicated in person, over the phone, or by email.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

7

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague

26. See Appendix 1 for a list of documents containing tax and legal advice from Baker McKenzie, or requests for advice, related to Facebook's international structure, cost sharing and licensing arrangements, intercompany agreements, corporate governance matters, and dividend distribution issues. Some of these communications include advice conveyed by Baker McKenzie attorneys that was subsequently incorporated into other confidential communications.

### Advice Prepared in Anticipation of Litigation

27. Given the real threat of IRS litigation against Facebook, I considered such potential risks when I advised Facebook about the establishment of a non-U.S. headquarters and the related intercompany agreements. I drafted several emails to Jue Lin (Facebook Tax) and Ted Price about IRS audit considerations because of the prospect of litigation with the IRS. In particular, I prepared one of my exchanges with Ted Price, which consisted of several emails between May 20, 2011 and June 17, 2011, related to cost sharing, in anticipation of such litigation. These emails would not have been created in substantially similar form but for the prospect of litigation with the IRS. *See* Appendix 1.

28. I also provided advice related to audit risk and exposure by phone and in person, which was provided in anticipation of litigation. I understand that much of this advice was used to create presentations to Facebook executives by Facebook Tax and Facebook Legal personnel.

### Advice Not Part of Tax Return Preparation or Transfer Pricing Reports

29. In formulating tax and legal advice regarding the establishment of Facebook's non-U.S. headquarters and related audit risk, my colleagues and I created numerous documents, including agreements, emails, memoranda, and other documents internal to Baker McKenzie. To the best of my knowledge, these documents were not created as part of tax return preparation or in connection with 26 U.S.C. § 6662 transfer pricing reports.

### Confidentiality

30. To the best of my knowledge, Baker McKenzie fulfilled its professional obligations regarding the confidentiality of tax and legal advice provided to Facebook, internal Baker McKenzie documents related to tax and legal advice, and client information received in connection with Facebook's request for tax and legal advice. Information I received from Facebook in connection

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

8

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague

with the establishment of its non-U.S. headquarters and related intercompany agreements was provided for the purpose of rendering tax and legal advice and was kept confidential by Baker McKenzie. My legal and tax advice to Facebook was similarly intended to remain confidential. As part of my firm's practices and procedures, all documents containing Facebook's confidential information or legal or tax advice were kept in a manner intended to maintain confidentiality. My colleagues and I kept this information secure by keeping it in locked offices or on Baker McKenzie's secure information system. To the best of my knowledge, throughout my tenure at Baker McKenzie, these documents were kept in confidence and the associated privileges or protections were not waived.

### Advice Billed at Hourly Rate and No Financial Stake In Outcome

31. To the best of my knowledge, all of Baker McKenzie's tax and legal advice services in connection with Facebook's non-U.S. headquarters and related intercompany agreements were billed to Facebook at hourly rates. Baker McKenzie had no direct financial stake in the outcome of Facebook's restructuring.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 1st day of March, 2018, in Palo Alto, California.

Gary D. Sprague

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856-2400

9

Case No.3:16-cv-03777-LB
Declaration of Gary D. Sprague